**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

LOCAL 513, INTERNATIONAL UNION OF   )
OPERATING ENGINEERS, AFL-CIO, *et al.*,   )
                                    )
                Plaintiffs,   )
                                      )
       vs.   )            Case No. 4:21-cv-1194-MTS
                                        )
CHECKERED FLAG EXCAVATION, INC.   )
                                        )
               Defendant.   )

**MEMORANDUM AND ORDER**

Before the Court is Plaintiffs' Motion for Summary Judgment, Doc. [21], on its own Complaint, Doc. [1], pursuant to Federal Rule of Civil Procedure 56, for claims under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145.  For the reasons set forth below, the Court denies Plaintiffs' Motion.

**I.**      **BACKGROUND**

Plaintiffs are a group of various employee benefit funds ("Plaintiff Funds") affiliated with the Local 513, International Union of Operating Engineers (the "Union").  This case arises from Plaintiffs' effort to collect delinquent fringe benefit contributions allegedly owed by Defendant Checkered Flag Excavation, Inc.

Defendant has been a signatory contractor to successive collective bargaining agreements ("CBA") with the Union for many years.  *See, e.g.*, Doc. [22-5].  In May 2017, Defendant signed a participation agreement, Doc. [22-6], as a signatory to the CBA then in effect, Doc. [22-7].  This is the CBA in dispute in this Motion.  The participation agreement stated the CBA was in effect

1

from May 1, 2017, through April 30, 2020, and required Defendant to make monthly contributions to the employee benefit funds.  The CBA stated it "automatically renewed" and would continue in effect for successive one year terms unless the Union or the SITE Improvement Association ("SITE") "gave the other written notice of its intention to terminate, amend or modify" the CBA within sixty (60) days of the CBA's original termination period (here, April 30, 2020).  Doc. [22-7].

On February 3, 2020, the Union sent written notice,[1] via a letter, to Defendant[2] of its proposed termination and/or modification of the CBA and asked Defendant for times and locations to meet and negotiate a successor CBA.  Doc. [22-8].  After Defendant received the Union's letter, Defendant verbally notified the Union that it was terminating and not renewing the CBA (set to expire in April 2020).  Doc. [35] ¶ 7.  Following expiration of the CBA, Defendant submitted contribution reports for May 2020 and June 2020, stating that Defendant owed *no contributions* to the Union.  Doc. [31-3].  Defendant did not submit contribution reports after June 2020.  *Id.*

On April 9, 2020, the Union and SITE executed an interim agreement while negotiations continued for a successor CBA, extending the terms of the CBA past the April 30, 2020, expiration date.  Doc.  [22-9].  On August 3, 2020, the Union and SITE finalized a successor CBA ("Successor CBA"), which is effective through May 3, 2023.  Doc. [22-10].

In a letter dated August 25, 2020, the Union sent Defendant a new participation agreement, operating as signature pages, for the Successor CBA, Doc. [22-11], similar to the participation agreements Defendant had received and signed in the past in order to participate in successive CBAs.  *See, e.g.*, Doc. [22-5]; Doc. [22-6].  Defendant did not sign or return the participation

---

[1] The subject line of the letter stated: "Written Notice of Proposed Termination and/or Modification of Existing Collective Bargaining Agreement between Local Union 513, International Union of Operating Engineers and Signatory Employers."
[2] Plaintiff sent this letter to Defendant and the other contractor signatories to the CBA.

agreement.  Because Defendant did not sign the agreement, Defendant was removed from Union jobs and not allowed to perform work on these jobs.  During the first half of 2021, Defendant met with the Union several times to confirm termination of its CBA with the Union.  Doc. [31-1] ¶ 19.  Eventually, the Union disclaimed interest in representing Defendant's employees by a letter dated and effective on September 14, 2021.  Doc. [22-12].

Plaintiffs filed suit against Defendant for delinquent contributions through September 30, 2021, pursuant to the terms of the Successor CBA.  Doc. [1].  Defendant argues that it had no obligation to pay contributions past April 30, 2020, when the CBA expired, because it had terminated its participation in the Successor CBA.

## II.   LEGAL STANDARD

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)).  The movant bears the initial burden of explaining the basis for its motion, and it must identify those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."  *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007).  If the nonmoving party fails to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, the moving party is "entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  The court views any factual disputes in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   DISCUSSION

The crux of this case depends on whether Defendant had obligations to make contributions beyond April 30, 2020, when the CBA expired.  As such, the main issue before the Court is whether Defendant terminated its participation in the Successor CBA.

The Court first looks to the controlling contractual agreements between the parties.  *Loc. 257, Int'l Bhd. of Elec. Workers, AFL-CIO v. Grimm*, 786 F.2d 342, 345–46 (8th Cir. 1986) (explaining the Eighth Circuit favors strict enforcement of the terms of a CBA where the terms of the agreement make clear the procedures for terminating such agreement).  But, contrary to Defendant's argument, the termination procedure stated in the CBA does not help the Court resolve the issue here because it does not govern how contractor signatories, like Defendant, terminate participation in the CBA.  Section 19.01 states that the CBA is "automatically renewed" and will continue in effect for successive one year terms unless the "Employer" or the "Union" "*gives the other* written notice of its intention to terminate, amend or modify this [CBA]" within sixty (60) days prior to the termination of the original period of the CBA.  Doc. [22-7] at 62 (emphasis added).  The CBA defines "Employer" as SITE.  *Id.* at 6.  Thus, the CBA is automatically renewed unless SITE or the Union provides *the other* written notice of its intention to terminate, amend, or modify the CBA.  Here, however, the record is silent as to whether the Union or SITE gave the other this required notice.  While it is undisputed that the Union's February 2, 2020, letter provided written notice of the Union's intent to modify and/or terminate the CBA, that notice was provided

4

to Defendant and "all Contractors signatory to" the CBA—not to SITE, as contemplated by Section 19.01 of the CBA.[3]

Neither the CBA nor the participation agreement provide a procedure for a "contractor signatory" to the CBA, like Defendant, to terminate its participation in a successive CBA. In fact, the record is devoid of *any* procedure or mechanism for parties (other than the Union and SITE) to terminate its participation in a controlling or successive CBA at all. In the absence of termination procedures, the undisputed facts are persuasive. After receiving the Union's February 2, 2020, "notice" letter, Defendant responded to the Union's termination notice and verbally notified the Union that it was terminating and not renewing the CBA set to expire April 30, 2020. Upon expiration of the CBA, Defendant stopped making contributions and did not participate in any negotiations for the Successor CBA. Defendant also refused to sign the signature pages for the Successor CBA, notably, as it *had* signed in the past to be bound by the successive CBAs. Later, Defendant physically met with the Union to *confirm termination* of the CBA at least two times. In the absence of procedures for Defendant to terminate participation in a successive CBA, the Court cannot find on this record that Defendant did not terminate its participation in the Successor CBA.

While the United States Court of Appeals for the Eighth Circuit has not formally recognized a termination defense, several other circuits, as well as district courts in this Circuit, have recognized that termination of the underlying CBA is a defense that may be available in a

---

[3] Had there been evidence that the Union sent the February 2, 2020, letter to SITE, the Court's analysis would be different. In that case, by its plain terms, then, the letter would have terminated Defendant's participation in the CBA on a date different than the CBA's expiration date of April 30, 2020. *Twin City Pipe Trades Serv. Ass'n, Inc. v. Frank O'Laughlin Plumbing & Heating Co.*, 759 F.3d 881, 882 (8th Cir. 2014) (explaining similar facts *did* terminate the CBA but holding the employer did *not* terminate the CBA based on "inconsistent conduct" post-termination).

cause of action for delinquent contributions under ERISA.[4]  When recognizing this defense, courts

look[5] at whether the defendant evinced "the unequivocal intent necessary to terminate participation

in a CBA."[6]  *Twin City Pipe Trades Serv. Ass'n v. Frank O'Laughlin Plumbing & Heating Co.*,

759 F.3d 881, 885 (8th Cir. 2014).   In *Twin City*, the Eighth Circuit declined to "formally

recognize" the termination defense "because the circumstances involved [t]here would not support

such a defense in any event."  *Id.*  There, the employer sent notice (via a letter) to the union that

properly terminated its participation in the successive CBA, but then, the employer engaged in

"inconsistent conduct" by continuing to make fringe benefit payments and participating in

---

[4] *See, e.g.*, *Louisiana Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404, 409 n.12 (5th Cir. 1998) (recognizing termination of the CBA); *Laborers Pension Trust Fund–Detroit & Vicinity v. Interior Exterior Specialists Constr. Group, Inc.*, 394 Fed. App'x 285 (6th Cir. 2010) (per curium) (same); *DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 653–54 (2d Cir. 1994) (same); *Teamsters Indus. Employees Welfare Fund v. Rolls–Royce Motor Cars, Inc.*, 989 F.2d 132, 138 (3d Cir. 1993) (same); *Bakery & Confectionery Union & Industry Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1022 (4th Cir. 1997) (same); *see also Heimerl v. Tech Elec. of Minn., Inc.*, 9 F. Supp. 3d 1002, 1021–27 (D. Minn. 2014) (recognizing termination as a defense and collecting cases from other jurisdictions that have held the same); *Johnson v. Allied Excavating, Inc.*, 0:15-cv-3237-JRT-DTS, 2019 WL 3750896, at *5 (D. Minn. Aug. 8, 2019) (considering the termination defense but rejecting it where defendants failed to show "clear and explicit" intent to terminate the CBA).

[5] As acknowledged by the Eighth Circuit, "[t]o the extent courts have held a termination defense is available in an action to collect fringe benefits, some have limited their inquiry to a [']cursory review['] of the parties' actions in order to keep the collection action from becoming complex or costly." *Twin City*, 759 F.3d at n.4; *see also Interior Exterior Specialists*, 394 F. App'x at 290 ("while many traditional contract defenses are unavailable in collection actions, trust funds are not entitled to 'enforce a *nonexistent* contractual obligation' at least where it is evident upon 'a cursory review of the parties' actions' that the contract has been terminated" (quoting *Plumbers & Pipefitters Loc. Union No. 572 Health & Welfare Fund v. A & H Mech. Contractors, Inc.*, 100 F. App'x 396, 402 (6th Cir. 2004) (internal citations omitted)); *Louisiana Bricklayers*, 157 F.3d at n. 12 ("Although a district court may consider the significance of a purported termination, the court's examination must end following a superficial inquiry into the termination's effect.").  Applying a "superficial" and "cursory review" to the facts here, the Court finds Defendant "unequivocally" communicated its intent to withdraw from the CBA, all of which are undisputed.

[6] This is consistent with the Eighth Circuit's approach in determining whether a labor agreement exists, in which "the crucial inquiry is whether there 'is conduct manifesting an intention to abide and be bound by the terms of an agreement.'"  *NLRB v. Int'l Bd. of Elec. Workers*, 748 F.2d 348, 350 (8th Cir. 1984).  Similarly, the emphasis on unambiguous and unequivocal conduct is consistent with the Eighth Circuit's approach in determining whether a CBA was repudiated. *See Nat'l Lab. Rels. Bd. v. Anderson Excavating, Co.*, 925 F.3d 970, 977 (8th Cir. 2019) (explaining a CBA may be repudiated by "open and notorious acts by one party, known to the other, which are inconsistent with the continuance of the contract," like a continuing failure to pay into the Union's fringe benefit funds, but no repudiation will be found "where a party sends conflicting signals or otherwise engages in ambiguous conduct" because then the party "has failed to manifest clear and unequivocal notice of the" repudiation).

negotiations for the successive CBA, which the Court found "manifest[ed] an intention to abide and be bound by the terms of" the successive CBA.  *Id.* at 882–86.

Unlike *Twin City*, Defendant did not engage in any "inconsistent conduct" after it expressed clear intent to terminate its participation in the Successor CBA.  Defendant verbally notified the Union that it was terminating and not renewing the CBA and then confirmed termination with the Union several other times.  Defendant ceased making contributions after the CBA expired and did not participate in negotiations with the Union for the Successor CBA. Because the Eighth Circuit has not expressly rejected the termination defense to ERISA cases for delinquent contributions, and this case is highly distinguishable from the case that the Eighth Circuit declined to apply the exception too, the Court applies the termination exception to the case at bar because the record shows Defendant unequivocally expressed an intent to terminate its participation in the Successor CBA and then, engaged in conduct *consistent* with its intent to terminate participation in the Successor CBA.

## CONCLUSION

Given the absence of any procedure for Defendant to properly terminate its participation in a CBA, Defendant's undisputed clear intent to terminate its participation in the Successor CBA, and Defendant's *consistent* conduct with its intent to not be bound by the Successor CBA, the Court finds that Defendant properly terminated its participation in the Successor CBA. Accordingly, because Defendant terminated participation in the Successor CBA, it could only be liable for any unpaid contributions through April 30, 2020, but bears no liability from May 1, 2020, to the present.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment, Doc. [21], is **DENIED**.

Dated this 22nd day of September, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE